Opinion issued March 6, 2008


 











In The

Court of Appeals

For The

First District of Texas






NOS. 01-06-01000-CR

 01-06-01001-CR






ADAM TRISTAN HOUSTON, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause Nos. 1039094 & 1042011






MEMORANDUM OPINION


 Appellant, Adam Tristan Houston, pleaded guilty to two aggravated robberies
without an agreed recommendation with the State. (1) The trial court assessed his
punishment at imprisonment for 30 years in each case to be served concurrently. In
two points of error, appellant argues that (1) the trial court abused its discretion in
accepting appellant's plea of guilty without a competency inquiry and (2) his trial
counsel was ineffective in going forward with appellant's plea of guilty without
requesting a competency and sanity evaluation.

 We affirm.

Background


 The State filed two cases against appellant for aggravated robbery in 2005. On
November 1, 2005, the trial court ordered Mental Health Mental Retardation
Authority of Harris County (MHMRA) to conduct a psychiatric exam. After a
physician determined that appellant was incompetent to stand trial, the trial court
committed appellant to Vernon State Hospital for mental health treatment on January
3, 2006. Three months later, a physician at the Texas Department of State Health
Services determined that appellant was competent to stand trial. On May 5, 2006, the
State filed two motions to conduct a psychiatric examination to determine appellant's
present sanity and competency, which the trial court granted. The appellate record
does not contain any information on whether these examinations were performed.

 Trial counsel for appellant also filed a "Motion for Appointment of
Independent Expert to Evaluate Defendant Regarding the Issue of Competency." The
trial court granted appellant's motion and ordered Dr. Susan Stone to evaluate
appellant's competency and, if necessary, his sanity. The appellate record does not
contain any information regarding whether Dr. Stone conducted this examination. 

 Appellant then pleaded guilty to the charged offenses on July 10, 2006. The
trial court did not find appellant guilty, but deferred a finding of guilt so that a pre-sentence investigation ("PSI") report could be made. After he pleaded guilty,
appellant sent a letter to the trial court on July 21, 2006, stating that he had been
committed to three psychiatric hospitals, diagnosed as bipolar, dysthimic,
schizophrenic, and suicidal. He stated that he hears voices telling him to do bad
things and that if he does not do them he will get migraine headaches. He also stated
that he does not remember what happened on the night of one of the robberies but that
he is willing to accept the consequences. He asked to have character witnesses testify
on his behalf and requested a full PSI report. His letter also stated that because he is
now on medication he can communicate with anyone and that after he is released he
has a guaranteed job.

 On September 29, 2006, after a PSI hearing, the trial court found that
appellant's competency had been restored, found appellant guilty of aggravated
robbery, and sentenced him to imprisonment for 30 years for both cases to run
concurrently. 

Notice of Appeal


 Preliminarily, we address the State's argument that appellant's notice of appeal
was untimely and that this Court lacks jurisdiction over the appeal. Texas Rule of
Appellate Procedure 26.2 provides that, in a criminal case, the notice of appeal must
be filed within 30 days after the trial court entered an appealable order. See Tex. R.
App. P. 26.2. If the notice of appeal is not filed within 30 days, the appellate court
may extend the time to appeal if the party files the notice of appeal and a motion for
extension within 15 days after the deadline for filing the notice of appeal. See Tex.
R. App. P. 26.3. 

 Here, the trial court imposed its sentence on September 29, 2006, and thus
appellant's notice of appeal was due on October 30, 2006. Appellant filed a pro-se
notice of appeal on October 31, 2006, one day too late. However, the appellate record
includes a photocopy of the envelope that contained the notice of appeal. The
postmark date indicates that the notice of appeal was mailed on October 27, 2006. 
Accordingly, we conclude that appellant's notice of appeal was timely under the
"mailbox rule." (2) 

Competency to Stand Trial


 In his first point of error, appellant argues that the trial court abused its
discretion in accepting his plea of guilty and proceeding with punishment without a
competency inquiry. Specifically, appellant contends that he was discharged from
MHMRA and placed back into the Harris County Jail on April 5, 2006. Then, on July
10, 2006, he pleaded guilty to the aggravated robberies, and, after a PSI hearing, the
trial court sentenced him in September. Appellant contends that the trial court should
have conducted a further investigation into appellant's competency to stand trial after
he was discharged from MHMRA and before he pled guilty and also before the
punishment hearing.

 We review a trial court's decision not to conduct a competency inquiry under
an abuse of discretion standard. Moore v. State, 999 S.W.2d 385, 393 (Tex. Crim.
App. 1999); Lawrence v. State, 169 S.W.3d 319, 322 (Tex. App.--Fort Worth 2005,
pet. ref'd). A defendant is presumed competent to stand trial and shall be found
competent to stand trial unless proved incompetent by a preponderance of the
evidence. Tex. Code Crim. Proc. Ann. art. 46B.003(b) (Vernon 2006). A
defendant is incompetent to stand trial if he does not have: (1) sufficient present
ability to consult with his lawyer with a reasonable degree of rational understanding
or (2) a rational, as well as factual, understanding of the proceedings against him. Id.
art. 46B.003(a) (Vernon 2006). If evidence suggesting the defendant may be
incompetent to stand trial comes to the attention of the court, the court on its own
motion must suggest that the defendant may be incompetent to stand trial. Id. art.
46B.004(b) (Vernon 2006). 

 A competency inquiry is not required, however, unless the evidence is
sufficient to create a bona fide doubt in the mind of the trial court whether the
defendant is legally competent. McDaniel v. State, 98 S.W.3d 704, 710 (Tex. Crim.
App. 2003) (applying former article 46.02 of Texas Code of Criminal Procedure). 
Evidence is usually sufficient to create a bona fide doubt regarding competency if it
shows "recent severe mental illness, at least moderate mental retardation, or truly
bizarre acts by the defendant." Id. Evidence capable of creating a bona fide doubt
about a defendant's competency may come from the trial court's own observations,
known facts, evidence presented, motions, affidavits, or any other claim or credible
source. Brown v. State, 129 S.W.3d 762, 765 (Tex. App.--Houston [1st Dist.] 2004,
no pet.). 

 Appellant presented no evidence that would raise a bona fide doubt about
appellant's competency during the months after he was released from Vernon State
Hospital until the time he pleaded guilty to the aggravated robbery cases. (3) Moreover,
the record reflects that appellant's counsel made a request for a competency
examination, which was granted. Although we do not have a record of the
examination, counsel's willingness to proceed with plea proceedings indicates that
counsel knew when appellant was competent and when he was not. Thus, the trial
court did not abuse its discretion by not holding an informal inquiry regarding
appellant's competence. 

 Appellant's previous mental and behavioral impairments, his inability to recall
the circumstances of his charged offenses, and his mental status at the time of his
charged offense do not establish the required elements of incompetency concerning
his present ability to consult with his counsel with a reasonable degree of
understanding or a rational and factual understanding of the proceedings against him. 
See Brown v. State, 129 S.W.3d 762, 766 (Tex. App.--Houston [1st Dist.] 2004, no
pet.). Moreover, appellant's letter to the trial court is well-written and well thought-out, and it acknowledges that his proper medication makes it easier for him to
communicate. Because appellant wanted to present witnesses to get leniency from
the trial court, the letter shows that he understood the serious nature of the charges
against him. Thus, we conclude that the letter would not raise a bona fide doubt
about appellant's competency to stand trial. Accordingly, the trial court did not abuse
its discretion in not conducting an informal inquiry at the time it received appellant's
letter.

 Appellant also argues that testimony from appellant's mother and appellant
himself at the PSI hearing should have alerted the trial court to make an informal
inquiry into his competence. Specifically, appellant points to his mother's testimony
as to appellant's family history and his childhood, which included physical and
emotional abuse by his father. She also testified that he was bipolar and depressed
and that he received medications, starting when he was a child. She testified that she
visited him at Vernon State Hospital while he was receiving care and that he appeared
"okay behaviorwise. It's just that he was so heavily medicated, very heavily
medicated--he's gained a lot of weight this last year." She also testified that she
visited him at the jail and that "he's definitely . . . medicated [at the jail]." She
clarified: 

It depends upon what medication that they have him on because they did
have him on some--I think it was Ambien and he couldn't stay awake. 
He would get up sometimes--you know, I would be there for, like, a
couple minutes. He would get up and walk out because--I don't
know--he didn't seem to have all of his wits about him. 

 

She testified that she had recently visited him in jail, he was able to carry on a
conversation, she was able to communicate with him, and he understood what she
was saying. She also testified that appellant was taking medication in jail and that
when he is taking mediation on a regular basis he is a better person. 

 During the PSI hearing, appellant had the following exchange with his trial
counsel:

 Q. How old are you?


 A. 20, sir.


 Q. You understand why we're here today?


 A. Yes, sir.


 Q. Why?


 A. Because the offense they have charged me.


 Q. Say again?


 A. Because the offense I'm charged with.


 Q. What are you charged with?


 A. Aggravated robbery.


 Q. How many of them?


 A. Two. Two aggravated robberies.


 Q. What's going to happen--when all this is finished
here today, what's going to happen? What's the
Judge going to do?


 A. Sentence me, sir. 


Later in the PSI hearing, appellant had the following exchange with the State:

 Q. Now, since you've been in jail over there, show the
Judge your left arm, forearm.


 A. (Defendant complies.)


 Q. How did that take place?


 A. I was in my cell and I saw little things crawling in
my arm. I had to cut them out.


 Q. You saw some what?


 A. Little things crawling around in my skin and I had to
cut them out.


 Q. Is that why you cut yourself?


 A. Yes, sir.


 Q. Were you on medication then?


 A. No, sir.


 Q. This was over in the Harris County Jail?


 A. Yes, sir.


 Q. Did they start at some point in time over there giving
you medication?


 A. Yes, sir.


 Q. Was it after that cutting took place?


 A. Yes, sir.


 Q. Did any--that cutting or any of that take place after
you got on medication?


 A. Like, a week or two afterwards.


 Q. What kind of medication did they give you?


 A. They gave me Zyprexa and Depakote, Wellbutrin
and Seroquel.


 Q. What did that do to you? How did it make you feel?


 A. Like, it started out, I'd feel real sleepy and I go to
sleep most of the day. Then, like, a couple weeks
afterwards, I start to feel I couldn't hear no voices or
see anything. It wouldn't be as much as I used to
see, see or hear.


 Q. Did you see anything crawling on your skin after
you started taking the medication?


 A. No, sir.


 Appellant further testified about his time on the drug Ambien with his trial
counsel:

 Q. Was that prescribed for you in the jail?


 A. Yes, sir.


 Q. What kind of effect did that have on you?


 A. Like, I go to sleep and I be sleep for, like, two or three days
and the people that were in the cell with me, the tanks with
me, they'll tell me, Hey, man, like, I, like, wake up under
the bench. They say I be talking to the wall and stuff. 
They say I piss on the floor and I piss on myself. Then
they talked to a couple of the guards and the guards had to
take me to go see MHMRA and I had to talk to them, like,
twice a month.


 Q. Do you remember me coming to visit you while you were
on that Ambien?


 A. No, sir.


 Q. Do you remember those occasions?


 A. Only once, sir.


 Q. You don't remember two or three jail visits I made to see
you while you were on that Ambien?


 A. No, sir.


 Q. Do you remember the recent jail visits I've made to see
you?


 A. Yes, sir, at the new jail, yes, sir.


 Q. Were you on--have they changed your medication to
something else recently?


 A. They took me off the Ambien. I'm on the same medication
I am now, but no Ambien.


 Q. How does that change your day-to-day life?


 A. Like, I wouldn't--I still feel--it still be good for me. I
wouldn't hear voices or see things, but I also wouldn't
be--do, just, like, off-the-wall stuff. I wouldn't, like, just
go wake up and slapping the wall or wake up and go
digging in the toilet or piss on the floor or anything.


 Q. You wouldn't be?


 A. Huh-uh. 


 Appellant testified that he had taken Zyprexa, Lithium, and Wellbutrin before
the hearing and that it helped him with depression and not having "episodes." 

 After considering all of the evidence, we cannot conclude that the trial court
abused its discretion in not holding an informal inquiry into appellant's competence
to stand trial. Neither a history of treatment for depression nor a history of childhood
abuse is by itself probative evidence of incompetence. See Moore v. State, 999
S.W.2d 385, 395 (Tex. Crim. App. 1999) ("A defendant's propensity toward
depression does not necessarily correlate with his ability to communicate with
counsel or his ability to understand the proceedings against him."); Baker v. State,
Nos. 05-94-01760-CR, 05-94-01806-CR, 05-94-01804-CR, 05-94-01805-CR, 1996
WL 156899, at *1-2 (Tex. App.--Dallas Mar. 29, 1996, no pet.) (not designated for
publication) (testimony that defendant was victim of child abuse, had head injuries,
was schizophrenic, and was semi-retarded not evidence of incompetence). Thus,
appellant's mother's testimony about appellant's previous mental and behavioral
impairments do not establish his incompetence to stand trial. See Brown, 129 S.W.3d
at 766.

 Although the evidence showed that appellant heard voices, the trial court
would have been within its discretion to conclude that the voices were a result of
appellant's extensive drug use. Moreover, the trial court could have discounted this
evidence because the physician who declared appellant competent to stand trial,
stated in a report: 

It should be recalled that [appellant] has admittedly complained of
psychiatric symptoms in order to manipulate healthcare providers
into giving him additional and unnecessary medications. . . .
However, he does tend to depict his psychiatric symptoms in an 'over
the top' manner that will seem obviously unauthentic to the trained
observer, but may strike those less familiar with the vagaries of mental
illness as genuinely bizarre. Although he demonstrated a clear,
rational, and factual understanding of the legal process in the
presence of this examiner, future treatment providers should be
aware of his risk for malingering. 


The trial court further heard evidence that appellant's mother saw him the Monday
before the PSI hearing and that she was able to communicate with him and he
understood what she was saying. She also testified that appellant was taking
medication in jail and that, if he is taking mediation on a regular basis, he is a "better
person." 

 Additionally, at the beginning of the PSI hearing, appellant conveyed to the
State and the trial court that he understood the charges against him. Although he may
not have recalled the details of the offenses for which he was charged, the trial court
was within its discretion to determine that appellant may not have recalled the details
of the offenses as a result of his extensive drug use. After considering all of the
testimony presented at the PSI hearing, we conclude that appellant did not present
evidence sufficient to raise a bona fide doubt in the trial court's mind about
appellant's competency to stand trial. See Brown, 129 S.W.3d at 766 (holding that
appellant did not show present or recent clinical proof of appellant's incompetency
in year in which trial was held); Rice v. State, 991 S.W.2d 953, 957 (Tex. App.--Fort
Worth 1999, pet. ref'd) (holding that competency test is not whether someone labored
under mental, behavioral, or psychological impairment); Townsend v. State, 949
S.W.2d 24, 27 (Tex. App.--San Antonio 1997, no pet.) (holding that competency test
is not met by evidence of depression or mental illness); Valdes-Fuerte v. State, 892
S.W.2d 103, 108 (Tex. App.--San Antonio 1994, no pet.) (holding that competency
test not met by evidence of insanity at time of offense). Thus, the trial court did not
abuse its discretion by not holding an informal inquiry into appellant's competency
to stand trial.

 We overrule appellant's first point of error.

Ineffective Assistance of Counsel


 In his second point of error, appellant argues that his trial counsel was
ineffective because he allowed appellant to plead guilty and proceed to punishment.

 Both the United States and Texas Constitutions guarantee an accused the right
to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; Tex.
Code Crim. Proc. Ann. art. 1.05 (Vernon 2005). This right includes the right to
reasonably effective assistance of counsel. Strickland v. Washington, 466 U.S. 668,
686, 104 S. Ct. 2052, 2063 (1984); Ex parte Gonzales, 945 S.W.2d 830, 835 (Tex.
Crim. App. 1997). To prove ineffective assistance of counsel, appellant must show
that (1) trial counsel's representation fell below an objective standard of
reasonableness, based on prevailing professional norms and (2) the result of the
proceeding would have been different but for trial counsel's deficient performance. 
Strickland, 466 U.S. at 688-92, 104 S. Ct. at 2064-67; see also Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Appellant has the burden of proving his
claim by a preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956
(Tex. Crim. App. 1998). We apply a strong presumption that trial counsel was
competent. See Thompson, 9 S.W.3d at 813. We presume counsel's actions and
decisions were reasonably professional and motivated by sound trial strategy. 
Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994).

 The same analysis we used in appellant's first point of error applies to
appellant's claim of ineffective assistance of counsel based on his trial counsel's
failure to raise the issue of his competency. Nothing in the record shows counsel
observed or otherwise was aware of conduct different than that we have recounted. 
See Jackson v. State, 973 S.W.2d 954, 955 (Tex. Crim. App. 1998) (claim for
ineffective assistance of counsel must be affirmatively supported by the record). 
Thus, appellant has not satisfied the first prong of showing ineffective assistance of
counsel.

 We overrule appellant's second point of error.









 Conclusion


 We affirm the judgment of the trial court.

 



 Evelyn V. Keyes

 Justice


Panel consists of Justices Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).
1. Appellate cause number 01-06-01000-CR; trial court cause number 1039094. 
Appellate cause number 01-06-01001-CR; trial court cause number 1042011.
2. The "mailbox rule" states that a document is deemed timely filed if it is sent to the
proper clerk by first-class mail in a properly addressed, stamped envelope on or before
the last day for filing and is received not more than ten days beyond the filing
deadline. Tex. R. Civ. P. 5; Tex. R. App. P. 9.2(b)(1), (2). 
3. We do not have a reporter's record of any proceedings on the guilty plea because
appellant waived that right. The trial court did have appellant's trial counsel's motion
for the appointment of an independent expert to evaluate appellant's competency, but
we have no information regarding the independent evaluation.